UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THAN DINH LE, | CASE NO. C25-2454-KKE |
| Petitioner(s), | ORDER ON HABEAS PETITION |
| v. | |
| PAMELA BONDI, et al., | |
| Respondent(s). | |

Petitioner Than Dinh Le, a citizen and national of Vietnam, challenges his detention at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Le has been in detention since July 2025, when he was taken into custody by Immigration and Customs Enforcement ("ICE") after visiting an ICE field office to request a letter that he needed for state benefits. Le claims, among other things, that his detention has become unlawfully prolonged. He seeks an order releasing him from detention and requiring ICE to give him notice and an opportunity to be heard before attempting to re-detain him or remove him to a country other than Vietnam. For the reasons stated below, the Court will grant Le's habeas petition in part.

## I. BACKGROUND

Le was born in 1968 in a small Vietnamese town called Qui Nhon. Dkt. No. 1 at 5; Dkt. No. 17-1 ¶ 1. He fled Vietnam in 1990, stopping in the Philippines for seven months and ultimately arriving in the United States on February 7, 1991, where he was admitted as a refugee. Dkt. No.

ORDER ON HABEAS PETITION - 1

17-1 ¶ 2; Dkt. No. 11 ¶ 4. Upon arriving, Le adjusted his status to become a lawful U.S. permanent resident. Dkt. No. 11 ¶ 4.

Between 2004 and 2006, Le was convicted of several crimes that ultimately led to an immigration judge ("IJ") ordering his removal to Vietnam. His convictions included Possession of a Firearm (on one occasion) and Possession of Narcotics (on two others) in violation of state law. Dkt. No. 11 ¶¶ 5–7. Following the latest of these convictions, ICE arrested Le and served him with a Notice to Appear charging him as removable from the United States due to his convictions for controlled substance and firearm offenses. *Id.* ¶ 8; Dkt. No. 10-1; *see also* 8 U.S.C. § 1227(a)(2)(B)(i), (a)(2)(C). On September 21, 2006, an IJ ordered Le removed to Vietnam. Dkt. No. 10-4. But because Vietnam would not accept him, ICE released Le a few months later under an Order of Supervision ("OSUP"). Dkt. No. 17-1 ¶ 3; Dkt. No. 11 ¶ 10; Dkt. No. 10-3.

About five years ago, Le's doctors informed him he had suffered a stroke. Dkt. No. 17-1 ¶ 3. Since then, he has been paralyzed on his left side, walks with a pronounced limp, and is unable to use his left arm or hand. *Id.* Because his paralysis affects the left side of his face, Le has difficulty speaking and being understood. *Id.* He has lived in permanent supportive housing in Seattle since 2021. *Id.* ¶ 5.

According to Respondents, between 2006 and 2019, Le occasionally violated the terms of his OSUP, including by being convicted of additional offenses, missing reporting dates (at least some of which occurred because Le was incarcerated), and being late to check-ins. Dkt. No. 11 ¶¶ 11–13. ICE did not revoke his OSUP, however, until July 22, 2025—over five years after the latest of these incidents—when ICE detained him after he reported to a field office to obtain a letter for state benefits. *Id.* ¶ 15; Dkt. No. 10-2 at 3. Department of Homeland Security ("DHS") records state that "[r]outine system inquiries indicated" Le was in violation of his OSUP reporting requirements and that per "headquarters guidance, there is now a significant likelihood of removal

to Vietnam in the reasonably foreseeable future." Dkt. No. 10-2 at 3. The record does not indicate that Le was ever told he was being detained for violating reporting requirements. Instead, DHS records state that ICE officers "advised [Le] that he was under arrest to execute his final order of removal to Vietnam."[1]  *Id.*  His notice of revocation of release does not mention reporting violations either, but instead states that "based on a review of your official alien file" ICE determined "that there are changed circumstances in your case" and "that you can be removed … pursuant to the outstanding order of removal against you." Dkt. No. 10-5 at 2.

Since his arrest over six months ago, the ICE field office in Tacoma has not yet prepared a request for a travel document to be approved by ICE headquarters, much less submitted one to the government of Vietnam. The parties differ in how they characterize Le's cooperation toward this end. *See* Dkt. No. 9 at 2; Dkt. No. 17-2. But the basic facts are undisputed: Respondents say Le has twice failed to fill out forms for a travel document application. Dkt. No. 11 ¶¶ 17, 22. Le agrees he did not fill out the forms, but states this is because he "no longer remember[s] much of the information ICE requires" such as the addresses where he lived in Vietnam 35 years ago. Dkt. No. 17-1 ¶ 8. He also does not have certain information about his family—such as contact information for his family in Vietnam or the United States—and does not know if his mother is still alive. *Id.* Le states that he filled out the information he could, "including the towns, cities, and provinces where [he] lived, and returned the forms to the deportation officers[,]" but the "officers became upset when [he] could not complete the forms" completely. *Id.* Le also told the officers what he knew about his family in the United States (*id.* ¶ 11), including the location of his

---

[1] Le disputes that he was ever informed of *any* reasons for his detention and claims that the ICE "officers would not tell me why I was being arrested" and refused to tell him whether he "was going to see a judge[.]" Dkt. No. 17-1. Because Le is entitled to release and prospective relief even under Respondents' version of events, the Court assumes Le was told that he was detained to effectuate his removal to Vietnam.

ORDER ON HABEAS PETITION - 3

brother's business where he believes investigators might locate his brother and obtain the information they need (Dkt. No. 16 at 3–4).

On December 12, 2025, ICE officers served Le with a "Decision to Continue Detention" letter (which is not in the record). Dkt. No. 11 ¶ 24; Dkt. No. 17-1 ¶ 9. According to Le, the letter stated that Le would remain in detention because (1) he had not demonstrated that he would not pose a danger to the community if released, (2) he had not demonstrated that he would not pose a significant flight risk, and (3) "ICE is in receipt of or expects to receive the necessary travel documents to effectuate [Le's] removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest." Dkt. No. 17-1 ¶ 9. Le states that he requested, but did not receive, an interview regarding his detention. *Id.* ¶ 10.

## II. DISCUSSION

### A. Legal Standard

#### 1. Habeas petition

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

#### 2. Detention of noncitizens who are ordered removed

Detention of noncitizens following an order of removal is governed by the Immigration and Nationality Act ("INA"). "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures

the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden,

ORDER ON HABEAS PETITION - 5

then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**B.     The Court Need Not Determine Whether APA Review Is Available.**

The Government argues that, although Le references the Administrative Procedure Act ("APA") as a legal basis for his challenge to removal to a third country, the APA does not apply because Petitioner has other adequate statutory remedies, namely habeas. Dkt. No. 9 at 8–9. Federal courts have rejected this argument, finding that "APA and habeas review may coexist." *Bautista v. Santacruz*, __ F. Supp. 3d __, 2025 WL 3713987, at *14 (C.D. Cal. Dec. 18, 2025) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185 (D.D.C. 2015)).

Moreover, this case is unlike *Trump v. J.G.G.*, which is cited by the Government, where petitioners' suit challenged removal solely under the APA, having dismissed habeas claims. 604 U.S. 670, 671, 674 (2025). Here, Le argues that his removal to a third country would violate not only the APA but also the Fifth Amendment, the Convention Against Torture, and 8 U.S.C. § 1231. *See* Dkt. No. 1 at 23–24. Accordingly, the Court concludes that it need not determine whether he would be entitled to relief solely under the APA as he has plead alternative bases for relief.

**C.     Le's Prolonged Detention is Unlawful**

Le is a noncitizen and Vietnamese national who has lived in the United States for 35 years. He is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for over six months, Le's detention is not "presumptively reasonable." *Id.* at 701. Through his petition and reply, Le has provided evidence showing that Vietnam repatriates few pre-1995 immigrants (Dkt. No. 17-2 ¶ 10), that Vietnam generally does not issue travel documents to pre-1995 immigrants within 30 days and typically takes far longer (*id.* ¶ 11), and that the Government has failed to effectuate his removal for nearly 20 years (Dkt. No. 1 at 3).

For instance, Le submitted a declaration by Jacqueline Dan, an attorney and immigration specialist at the Orange County Public Defender's office in Santa Ana, California, which states that, of the 516 pre-1995 immigrants her organization has been able to locate in ICE detention, Vietnam has not issued travel documents to nearly any of them. Dkt. No. 17-2 ¶ 10. Dan also states that, in her experience, before issuing travel documents, the Vietnamese government conducts detailed background checks and investigations. *Id.* ¶ 12. For Vietnamese emigrants like Le who were born during the Vietnam War, these investigations are often complicated because vital records were frequently destroyed or not issued. *Id.* Further, the record shows that, since his detention in July, the local ICE office has not gathered the information it needs or completed the application to request a travel document. Dkt. No. 11 ¶ 26. Once that happens, ICE headquarters would still need to approve the application before it could be submitted to the government of Vietnam, all of which would need to happen before Vietnam could even begin its process of investigating and deciding whether to issue Le a travel document. *Id.*

To defeat Le's *Zadvydas* claim, Respondents rely on their contention that Le has failed to cooperate with ICE's efforts to secure a travel document. A noncitizen who "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government" cannot meet his "burden to show there is no significant likelihood of removal in the reasonably foreseeable future." *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003); *see also* 8 U.S.C. § 1231(a)(1)(C) (extending detention period pending removal if a noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to [their] departure"). The record, however, does not support Respondents' contention.

Le's sworn declaration explains that he has tried to cooperate to the best of his ability but has been unable to provide information he does not know or cannot remember, such as his Vietnamese addresses from before he moved to the United States as a young man. Dkt. No. 17-2

ORDER ON HABEAS PETITION - 7

¶ 8. Le states that he filled out the forms to the extent he could and told ICE what he knows about his brother so that ICE can gather the remaining information from his only known living family member. *Id.* ¶ 11; Dkt. No. 17 at 3–4. Respondents present no evidence inconsistent with this declaration. While they characterize Le's failure to complete the forms as "refus[ing]" to cooperate (Dkt. No. 11 ¶¶ 19, 22), Respondents fail to identify the information Le has not provided or introduce into the record the forms Le purportedly "refused" to complete. As several other courts, including in this District, have held, a "bare allegation that [the petitioner] was 'determined as not being cooperative,' without details, is insufficient to defeat [a] *Zadvydas* claim." *Ghasedi v. Wamsley*, No. 2:25-CV-01984-RSM-BAT, 2025 WL 3699705, at *6 (W.D. Wash. Dec. 1, 2025), *report and recommendation adopted*, No. 2:25-CV-01984-RSM-BAT, 2025 WL 3697208 (W.D. Wash. Dec. 19, 2025); *see also Kebe v. Gurule*, No. CV161116PHXJATJFM, 2016 WL 6404170, at *6 (D. Ariz. Sept. 29, 2016), *report and recommendation adopted*, No. CV-16-01116-PHX-JAT, 2016 WL 6277546 (D. Ariz. Oct. 27, 2016) ("Respondent argues that Petitioner is refusing to produce information, but fail[s] to identify what information has not been provided.").

In sum, Le "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Accordingly, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.*

Respondents submitted a declaration by Deportation Officer Yralees Diaz, which states that ICE Enforcement and Removal Operations ("ERO") "has been informed by ERO HQ that there is a substantial likelihood of removal in the reasonably foreseeable future for *all* Vietnamese aliens, including those who arrived in the United States before July 12, 1995, and are subject to a final order of removal[.]" Dkt. No. 11 ¶ 25 (emphasis added). Respondents offer no supporting details to bolster ERO HQ's sweeping conclusion. Dkt. No. 9 at 13–15. In any event, simply declaring that *all* pre-1995 immigrants are removable in the foreseeable future is not the sort of

ORDER ON HABEAS PETITION - 8

individualized assessment that might "rebut the evidence presented by petitioner that his individual circumstances make removal unlikely." *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 726 (W.D. Wash. 2025) (citing *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, *4 (D. Mass. June 20, 2025) (requiring an individualized analysis)). "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Id.* at 725 (citing cases).

Despite Respondents' claim of soon-impending removal, Le has now been detained for over six months, ICE has not gathered the information it needs to complete a travel document request, and Vietnam has not begun its process for determining whether to issue the travel document necessary to effectuate Le's removal. "ICE is not permitted to hold [Le] indefinitely while it waits for travel documents from Vietnam." *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025). The Court will therefore grant Le's habeas petition and order his immediate release, subject to the conditions of his prior OSUP.

**D.    Le's Requests for Injunctive Relief**

Le also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event ICE re-detains him or attempts to remove him to a third country in the future. Dkt. No. 1 at 9–21. Specifically, he requests an order enjoining his removal to any third country or, in the alternative, requiring notice and an opportunity to respond before any third country removal and an order requiring Respondents to hold a hearing before a neutral decisionmaker before re-detaining him in the future. *Id.* at 26.

Because Le's claims invoke the Court's habeas and federal question jurisdiction, the Court may provide equitable relief on those claims if Le meets the standard for a permanent injunction. *See* Dkt. No. 2 at 4; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Indeed, this Court and many others have ruled that Respondents' third-country removal policy does not comport with

due process and have ordered similar relief. *See, e.g.*, *Kumar v. Wamsley*, C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025); *Baltodano v. Bondi*, C25- 1958RSL, 2025 WL 3484769, at *2 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Bondi*, 2:25-CV-02024-TL, 2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *A.A.M. v. Andrews*, 1:25-CV-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025). As detailed below, the Court will grant in part Le's request for injunctive relief.

       1.   <u>Respondents must comply with federal regulations if Le is re-detained.</u>

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)). The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future" or if the noncitizen "violates any of the conditions of release[.]" 8 C.F.R. § 241.13(i)(1)–(2). The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). The regulation further requires that "[t]he revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

ORDER ON HABEAS PETITION - 10

Contrary to Respondents' claims, the record does not indicate that ICE complied with the requirements set forth above when it detained Le in July 2025. For instance, DHS records do not reflect that Le was ever told that non-compliance with reporting requirements was among the reasons his OSUP was revoked, as Respondents now contend is the case. *See* Dkt. No. 10-2 at 3 (stating merely that "[o]fficers advised Le that he was under arrest to execute his final order of removal to Vietnam"); 10-5 (notice of revocation of release indicating only "changed circumstances"). Moreover, there is no indication Le ever had the opportunity to submit "evidence or information" showing that he "ha[d] not violated the order of supervision" (which he apparently was never told was at issue) or that "there [was] no significant likelihood" of his removal "in the reasonably foreseeable future[.]" 8 C.F.R. § 241.13(i)(3). Nor does the record support that ICE conducted "an evaluation of any contested facts relevant to the revocation" or made a subsequent "determination whether the facts as determined warrant revocation and further denial of release." *Id.*

Given Respondents' well-documented and widespread failures to comply with 8 C.F.R. § 241.13(i)(3) (in this case and countless others throughout the country[2]), Le's concerns regarding re-detention without process are not speculative. These concerns are heightened by the additional evidence provided in the Dan declaration that Vietnamese individuals who have been released pursuant to habeas petitions have since been re-detained by ICE before their travel documents have

---

[2] *See, e.g., Lecky v. Bondi*, No. 2:25-CV-02637-TLF, 2026 WL 266066, at *5 (W.D. Wash. Feb. 2, 2026) (Government failed to provide evidence of an informal interview, revocation custody review, or evaluation of contested facts); *Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *10 (S.D. Tex. Jan. 28, 2026) (Government failed to show petitioner received notice of OSUP revocation or any internal procedures to evaluate his changed circumstances justifying re-detention); *Hagos v. Noem*, No. 3:26-CV-150-JES-DEB, 2026 WL 202873, at *3–6 (S.D. Cal. Jan. 27, 2026) (Government failed to provide an opportunity to submit evidence contesting OSUP revocation and failed to show a basis for ICE's determination of changed circumstances); *Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *5–7 (W.D. Wash. Dec. 24, 2025) (Government re-detained petitioner without a basis to conclude that changed circumstances supported a reasonably foreseeable removal); *Rodriguez v. Bondi*, No. C25-2167RSM, 2025 WL 3466925, at *2–3 (W.D. Wash. Dec. 3, 2025) (Government could not "confirm whether Petitioner received an informal interview pursuant to 8 C.F.R. § 241.13(i)(3)").

ORDER ON HABEAS PETITION - 11

been obtained. Dkt. No. 17-2 at 7. However, notwithstanding Le's well-founded fear of future regulatory violations, the Court cannot determine on this record whether due process would require a pre-detention hearing before an IJ in a hypothetical re-detention regardless of the circumstances. Constitutional due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" but, rather, "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citations omitted).

The Government does not dispute that 8 C.F.R. § 241.13(i) would govern any future revocation of Petitioner's release. Dkt. No. 9 at 11–12, 15. Accordingly, at this juncture, the Court finds it sufficient to order that, if Respondents revoke Le's OSUP and re-detain him in the future, they must fully comply with the procedure set forth in 8 C.F.R. § 241.13(i), including a meaningful opportunity for Le to know and contest the basis for the revocation. In declining Le's request to determine, at this time, whether a pre-detention hearing before an IJ is necessarily required in all cases, the Court is not foreclosing Le's ability to challenge—on procedural due process or other grounds—any revocation of his OSUP in the future, at which time the Court would have the benefit of a record of the particular circumstances at issue.

2. <u>Notice and an opportunity to be heard must accompany any third country removal.</u>

When the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country. 8 U.S.C. § 1231(b). But in doing so, it must comply both with the INA and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country where their

ORDER ON HABEAS PETITION - 12

"life or freedom would be threatened … because of [their] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  The Government must "make a determination regarding a noncitizen's claim of fear before deporting him."  *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).  Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an IJ.  *Aden*, 409 F. Supp. 3d at 1011; *Baltodano*, 2025 WL 2987766, at *3–4; *Nguyen*, 796 F. Supp. 3d at 739.

Against this legal backdrop, Le requests an order requiring notice of any third-country removal and the opportunity to respond and contest that removal in reopened removal proceedings if he has a fear of persecution or torture in the selected country.  Dkt. No. 1 at 26.  In support, Le cites a July 9, 2025 ICE policy memo, which allows for deportation of individuals to third countries "without any procedures for notice or an opportunity to be heard."  Dkt. No. 1 at 20.  Respondents do not dispute that their policy permits, in some instances, removal to a third country without notice and an opportunity to be heard, but argue that Le's challenge is not ripe because ICE has not indicated it will remove him to any country but Vietnam.  *See* Dkt. No. 9 at 15–16.  The problem with Respondents' argument is that, without a requirement that ICE notify Le of its intent to remove him to a third country, Le could be put on a plane without being told where he is going and would never have the chance to express a reasonable fear of persecution or torture or seek judicial intervention.  Le's fear of such a circumstance is not speculative, as such removals have been well documented by the courts and the press.  *See e.g.*, *Nguyen*, 796 F. Supp. 3d at 733-74 (collecting cases); *Elshourbagy v. Bondi*, No. 2:25-CV-02432-TL, 2025 WL 3718993, at *9 (W.D. Wash. Dec. 23, 2025) (discussing Sarah Stillman, *Disappeared to a Foreign Prison*, The New Yorker (Dec. 12, 2025)).

ORDER ON HABEAS PETITION - 13

As this Court and numerous others have consistently held, the procedures set forth in the July 9, 2025 ICE policy memo fall well short of what the *Aden* court and others in this district have found due process and the INA require. Thus, the Court will grant Le's request for relief. Should Respondents take steps to remove Le to a country other than Vietnam, they must provide Le with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an IJ under 8 U.S.C. § 1231(b)(3). *Nguyen,* 796 F. Supp. 3d at 727. ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011)).

3. Le's request to enjoin third-country removal is denied without prejudice.

Finally, Le seeks to enjoin Respondents from removing him "to any third country" on the basis that ICE's third-country removal policy is punitive, in violation of his Fifth and Eighth Amendment rights. Dkt. No. 1 at 3, 24–25. As noted above, numerous courts, including this one, have held the Government's third-country removal policy is unconstitutional. *See, e.g.*, *Kumar*, 2025 WL 3204724, at *6; *Nguyen*, 796 F. Supp. 3d at 735 (collecting cases). The Government does not address this growing body of legal authority, nor does it dispute the underlying factual allegations supporting it. Instead, Respondents again argue that Le's request to enjoin third-country removal is speculative and premature, as ICE seeks only to remove Le to Vietnam, and he "presents no evidence of any intention by ICE to remove Petitioner to a third country." Dkt. No. 9 at 15.

ORDER ON HABEAS PETITION - 14

The Court agrees with Respondents that the present record does not support such a broad injunction. Rather, as detailed above, this order requires the Government to provide Petitioner with due process in effectuating any future third-country removal. As such, on this record, it is not clear to the Court that additional injunctive relief is necessary to prevent irreparable injury at this time. Nothing in this order prevents Petitioner from pursuing additional relief if warranted by future events. *See Coke v. Bondi*, No. C26-71-MLP, 2026 WL 221514, at *4 (W.D. Wash. Jan. 28, 2026).

### III.  CONCLUSION

The Court GRANTS Le's habeas petition. The Court further ORDERS:

1. Respondents are ORDERED to immediately release Le from custody under the conditions of his most recent order of supervision and not to re-detain him without compliance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231.

2. It is further ORDERED that if Respondents take steps to remove Le to a country other than Vietnam, they must provide Le with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

3. Within **FORTY-EIGHT (48)** hours of this order, Respondents must provide the Court with a declaration confirming that Le has been released from custody.

4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 5th day of February, 2026.

Kymberly K. Evanson
United States District Judge